**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Ann Eberenz,

    Plaintiff,

    v.                                 Case No. 1:05cv297

Cincinnati Children's Hospital,        Judge Michael R. Barrett
Medical Center,

    Defendant.

**OPINION & ORDER**

This matter is before the Court upon Defendant Cincinnati Children's Hospital Medical Center's Motion for Summary Judgment. (Doc. 9)  Plaintiff Ann Eberenz filed a Memorandum in Opposition (Doc. 16), and Defendant filed a Reply (Doc. 20).  This matter is ripe for review.

**I.    FACTUAL BACKGROUND**

In 1998, Plaintiff began working for Defendant as a computer operator. (Doc. 14, Ann Eberenz Depo. at 13)  In 2000, Plaintiff transferred to a position as a help desk analyst in the Information Services Department. (Id. at 13-14)  A help desk analyst responds to calls from employees, patients, or others who have computer or telephone equipment problems. (Doc. 13, Tony Johnston Depo. at 26-27)  An analyst takes hundreds of calls each week. (Id. at 24)  During a call, an analyst is expected to obtain information from the caller, analyze and assess the situation, and independently determine the appropriate course of action to resolve the issue. (Doc. 12, Karen Maas Depo. at 18; Doc. 10, Marianne James Depo. at 15)  Customer service is an essential part of the job. (Doc. 9,

Maas Decl. ¶ 7)

In November of 2001, Karen Maas was hired as Director of Information Services Customer Services. (Maas Decl. ¶ 5) Maas was Plaintiff's direct supervisor. (Maas Depo. at 5) Maas' supervisors were Marianne James, Vice President of Information Services, and Tony Johnston, Assistant Vice President of Information Services. (James Depo. at 6, 10, 13) James and Johnston instructed Maas that she "needed to raise the bar" in Customer Services because there was a general dissatisfaction with the quality of service being provided by this division. (Id. ¶ 6) Maas spoke with her employees regarding the need to improve customer service skills. (Id. ¶ 7) Johnston also spoke with employees, telling them that customers have "to hear their smile." (Johnston Depo. at 26) Johnston told employees: "This may be the only interaction that person ever has with IS; I want it to be a positive uplifting experience as opposed to a negative one, a very monotone or very bland experience." (Id. at 27)

Maas began to monitor the help desk analysts' performance by listening to phone calls. (Maas Depo. at 36, 39-40) Maas provided feedback to Plaintiff, telling her that she needed to improve her customer service skills, by saying "please," "thank you," and "is there anything else I can do for you?" (Id. at 41) Maas also told Plaintiff to listen better, and ask for better information. (Id.) Maas felt that Plaintiff interrupted callers and tried to hurry through calls. (Id.)

Johnston and Maas received complaints about Plaintiff from customers and co-workers. (Johnston Depo. at 17, 21, 23; Maas Depo. at 56) James also complained to Johnston about Plaintiff's monotone voice and poor listening skills. (James Depo. at 21) Maas documented two of the customer complaints and counseled Plaintiff on how she

handled the calls. (Maas Decl. ¶ 8 & Ex. 2) The first documented complaint occurred in October of 2002. (Id.) The second complaint occurred in July of 2003. (Id.) Maas played a recording of the first call, and explained to Plaintiff that she was abrupt, interrupted the caller, did not use "please" or "thank you," did not explain how the problem would be fixed, or give the caller any confidence in the system. (Id.) The second call dealt with access to computer records as part of an investigation of an employee. Maas explained to Plaintiff that this was a sensitive situation, and she should have involved human resources; Plaintiff should have designated the "ticket" for this call as critical priority; and some of the information on the ticket should not have been recorded due to the private and confidential nature of the situation. (Id. ¶ 8, Ex. 3) Maas also pointed out that Plaintiff interrupted the caller many times, and did not use many pleasantries. (Id.) Maas told Plaintiff that she did not feel that Plaintiff really understood what was going on or being asked for. (Id.)

Maas began recruiting for a senior help desk analyst. (Maas Depo. at 33-34) Plaintiff asked to be considered for the position, and Maas interviewed Plaintiff. (Maas Decl. ¶ 9) Maas did not feel that Plaintiff was qualified for the position. (Id.) Maas told Plaintiff that she needed to work on her customer service skills and "grow into" her position of help desk analyst. (Id.) Maas hired David Burns for the position because Maas believed that he was the most qualified candidate. (Id.) Burns had prior customer service experience as an information technology consultant and a business development manager. (Id.)

In August of 2003, Maas met with Plaintniff to discuss her annual performance appraisal. (Maas Depo. at 94; James Depo., Ex. 1) Maas rated Plaintiff as "needs improvement" in nine areas. (James Depo., Ex. 1) As a consequence, Plaintiff was placed

on a performance improvement plan. (Maas Decl. ¶ 11) This was the first time that Plaintiff had formally been disciplined for any performance related issues. (Eberenz Aff. ¶ 1) Over a three month period, Maas met with Plaintiff, and counseled her in each of the areas she needed to improve. (Maas Decl. ¶ 11) Lalita Duggal, the lead help desk analyst, also met with Plaintiff. (Id. ¶ 12) In December of 2003, Maas passed Plaintiff from the performance improvement plan. However, Maas had concerns that Plaintiff was only doing what was necessary to pass the performance improvement plan, and was not making efforts for continuous long-term improvement. (Maas Decl. ¶ 12) Maas told Plaintiff that she needed to follow-through on continuing to improve. (Id.)

In January of 2004, James and Johnston listened to two calls between Plaintiff and a nurse who was reporting problems with a patient's phone. (James Depo. at 42-43; Johnston Depo. at 60) Plaintiff told the nurse to call another number, failed to provide a warm hand-off to the correct person, and failed to ensure that someone was able to help the nurse. (Id.) When the nurse called again, Plaintiff asked the nurse several times for her name and the room or phone number involved. (Id.) Plaintiff then asked the nurse to go check the phone to make sure that it could not dial out or receive calls. (Maas Depo. at 117; James Depo. at 49-50) While Plaintiff was on hold, Plaintiff stated: "these people are pissing me off." (James Depo. at 51)

James and Johnston discussed the situation, and decided to terminate Plaintiff. (Id. at 63) Maas agreed that Plaintiff should be terminated. (Maas Depo. at 115, 121-22) The Vice President of Human Resources approved this decision. (Johnston Depo. at 63-64) Maas and Johnston met with Plaintiff and informed her that she was being terminated. (Johnston Depo. at 69-70; Maas Depo. at 118-19) Maas and Johnston told Plaintiff that

after two years of coaching and counseling and a performance improvement plan, the way she handled the calls from the nurse showed extremely poor customer service. (Maas Decl. ¶ 13) Maas and Johnston explained to Plaintiff that the comment she made while on hold was unacceptable. (Johnston Depo. at 75) Johnston explained that the comment was "the straw that broke the camel's back." (Id. at 52)

Plaintiff used Defendant's internal grievance procedure to grieve her termination. (Ebernez Depo. at 31) A grievance panel recommended that the termination be upheld. (Maas Decl. ¶¶ 4, 14) The CEO of the Hospital reviewed the panel's decision, and upheld the termination. (Maas Decl. ¶ 14)

A week before Plaintiff's calls with the nurse, Burns argued and raised his voice during a call with a vendor. (Maas Depo. at 42-43) Maas "strongly counseled" Burns for his conduct. (Id. at 43) Maas did not terminate or formally discipline Burns for this incident. (Id. at 42-43)

Shortly after Plaintiff's termination, another help desk analyst, Eric Loosekamp, made derogatory comments about a customer while on a call. (Johnston Depo. at 55) Loosekamp was counseled, but was not terminated. (Id. at 56-57) Maas later placed Loosekamp on a performance improvement plan for inappropriately challenging his supervisors. (Doc. 16, Ex. C) Maas gave Loosekamp six months to improve. (Id.) Loosekamp was ultimately terminated. (Doc. 16, Ex. D)

In her Complaint, Plaintiff alleges gender discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq*. (Count I) and Ohio Revised Code §§ 4112.02(A) and 4112.99 (Count II); violation of Ohio public policy (Count III); violation of the Fair Labor Standards Act, 29 U.S.C. § 207 (Count IV); and violation of Ohio Minimum Fair Wage Standards Act,

Ohio Revised Code § 4111.03 (Count V).

Defendant moves for summary judgment only on Plaintiff's gender discrimination claims under federal and Ohio law (Counts I & II), and Plaintiff's claim for violation of Ohio public policy (Count III).

## II.    ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252. The trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes v. Runyon*, 912 F.Supp.280, 283 (S.D.Ohio 1995); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes*, 912 F.Supp. at 283.

### B. Gender discrimination

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

The Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112."  *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).

In a case alleging employment discrimination in violation of Title VII, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive.  *Rallins v. Ohio State University*, 191 F.Supp.2d 920, 928 (S.D. Ohio 2002), *citing*, *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348-49 (6th Cir. 1997).  Plaintiff has not presented any direct evidence in support of her discrimination claim.

Where no direct evidence of discrimination exists, a claim of employment discrimination is to be analyzed using the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  A plaintiff has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* at 802.

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that (1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she

was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

If the plaintiff succeeds in establishing a *prima facie* case, an inference of discrimination arises, and the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). If the defendant articulates a nondiscriminatory reason for its actions, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons put forth by the defendant were not its true reasons but were a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253.

Plaintiff argues that she has made out a *prima facie* case of discrimination because male employees, Burns and Loosekamp, argued with callers and made derogatory comments to callers, but were not terminated.[1] Plaintiff argues that the conduct of her male counterparts was much more serious because they were made while pressing the

---

[1] Plaintiff also references the male telecommunication employees who were involved in the incident with the nurse as comparators, but Plaintiff does not explain how these employees are similarly situated.

mute button, which is more likely to result in the caller hearing the comment. Defendant responds that there is no evidence that these employees had a similar performance or disciplinary history. Defendant also maintains that these male employees were treated in the same manner as Plaintiff. Defendant points to deposition testimony which shows that after the customer complaint, each male employee was counseled, just as Plaintiff was counseled after Maas received complaints about Plaintiff. Defendant also points to evidence that Loosekamp was terminated after his performance problems continued.

Even assuming that there is sufficient evidence that Plaintiff was treated differently than similarly-situated, male employees, Plaintiff has not shown that Defendant's reason for terminating her was pretext for discrimination.

Defendant states that Plaintiff was not terminated for making the single comment while on hold with the nurse. Instead, it was the history of performance issues, and the fact that the comment came within two months of completing a performance improvement plan.

Plaintiff argues that she can show that this reason is pretextual because there is a question regarding who made the decision to terminate her employment. The Court has reviewed the deposition testimony, and Johnston and James testified that it was their decision to terminate Plaintiff, but they consulted Maas and the Vice President of Human Resources. Therefore, the Court finds that this argument has no merit.

Plaintiff also argues that pretext is shown because James and Johnston did not use Defendant's progressive discipline policy before deciding to terminate her. However, Plaintiff has not informed the Court as to what the progressive discipline policy was. Moreover, as this Court has recognized, "an employer's failure to follow self-imposed

regulations or procedures is generally insufficient to support a finding of pretext." *Johannes v. Monday Community Correctional Institution*, 434 F.Supp.2d 509, 520 (S.D.Ohio 2006), *quoting White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232, 246 (6th Cir. 2005).

Next, Plaintiff argues that the reasons given for her termination are insufficient. "[T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc). Therefore, "[w]hen the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807-808 (6th Cir. 1998), *quoting*, *Burdine*, 450 U.S. at 256. Plaintiff has not produced sufficient evidence to establish that Defendant's decision to terminate her employment was not reasonably informed and considered. Plaintiff argues that Defendant's criticisms of her performance were insufficient because they were subjective. The Sixth Circuit has explained: "Subjective employment evaluations, however, are not illegal *per se*. The ultimate issue in each case is whether the subjective criteria were used to disguise discriminatory action." *Grano v. Department of Development of City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983), *citing Ramirez v. Hofheinz*, 619 F.2d 442, 446 (5th Cir. 1980). The Court finds that the subjective criteria used by Defendant was not used to disguise discriminatory action. Defendant has presented evidence of the history of Plaintiff's

performance counseling and the need to place Plaintiff on a performance improvement plan. While there is evidence that Plaintiff handled a high number of calls and "closed" a high percentage of her calls, Defendant was free to require that Plaintiff handle these calls in a certain manner.

In addition, there is no evidence that Defendant's decision was not reasonably informed. While James and Johnston may not have remembered the specific details of the two calls which resulted in complaints in October of 2002 and July of 2003, there is evidence that James and Johnston were familiar with Plaintiff's performance issues. Moreover, James and Johnston listened to the phone calls with the nurse, which according to Johnston, was "the straw that broke the camel's back." In addition, Plaintiff was given the opportunity to grieve her termination, which was upheld and approved by the CEO.

Finally, Plaintiff argues that there was a pattern of discrimination against females in the Help Desk office. The pattern-or-practice method of proving discrimination is not available to individual plaintiffs, but the Sixth Circuit has held that pattern-or-practice evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework. *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004). However, Plaintiff's only pattern-or-practice evidence is that other females were placed on performance improvement plans and Maas instructed Plaintiff and another female to "shadow" two other male employees. Yet, Defendant provided evidence that males were also placed on performance improvement plans, and male employees were also required to shadow female employees.

Plaintiff has also argued that she suffered an adverse employment action when Defendant failed to promote her into the position of senior help desk analyst. However,

Plaintiff has not shown that she was qualified for the position, or that Defendant's nondiscriminatory reason–that Burns was the most qualified candidate–is pretext for discrimination.

Therefore, even if Plaintiff were to establish a *prima facie* case of discrimination, Plaintiff has not shown that Defendant's nondiscriminatory reasons for her termination or the failure to promote her to the position of senior help desk analyst were pretext for discrimination.

### C. Ohio Public Policy

Plaintiff does not address her public policy claim in her Memorandum in Opposition. Defendant argues that Plaintiff's claim fails because Title VII and Ohio Revised Code Chapter 4112 provide an adequate statutory remedy to protect the underlying public policy. The Court agrees.

Under Ohio law, termination of an at-will employee is wrongful if the termination was against a clear public policy. *Painter v. Graley*, 639 N.E.2d 51, 56 (Ohio 1994). In *Collins v. Rizkana*, the Ohio Supreme Court adopted the following analysis for determining whether the termination was against public policy:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

652 N.E.2d 653, 657-58 (Ohio 1995). However, this Court has recognized that Ohio courts have held that "[a] claim for wrongful discharge in violation of public policy embodied in [a] statute prohibiting discriminatory practices will fail if the underlying discrimination claim fails." *Desanzo v. Titanium Metals Corp.*, 351 F. Supp. 2d 769, 782-783 (S.D. Ohio 2005) (holding that because plaintiff's disability discrimination claim failed, his public policy claim failed as a matter of law). In addition, this Court, following the reasoning in *Wiles v. Medina Auto Parts*, 773 N.E.2d 526 (Ohio 2002), held that the public policy expressed by Ohio Revised Code § 4112.02(I) will not be jeopardized by the lack of a common law tort remedy. *Id.*, at n.11.

### III. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendant Cincinnati Children's Hospital Medical Center's Motion for Summary Judgment (Doc. 9). Defendant is entitled to summary judgment on Plaintiff's gender discrimination claims under federal and Ohio law (Counts I & II), and Plaintiff's claim for violation of Ohio public policy (Count III).

Plaintiff's claims for violation of the Fair Labor Standards Act, 29 U.S.C. § 207 (Count IV); and violation of Ohio Minimum Fair Wage Standards Act, Ohio Revised Code § 4111.03 (Count V) remain.

**IT IS SO ORDERED.**

                                               */s/ Michael R. Barrett*
                                               Michael R. Barrett, Judge
                                               United States District Court